UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| V. | : | NO. 3:22CR171 (SVN) |
| FRANCISCO AYALA | : | JULY 5, 2023 |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

I.   Background

Until the age of 16, Francisco Ayala's life was uneventful, and he lived with his mother and father and siblings in a family which was loving, nurturing and supportive. PSR at 65-71. Though the family was relatively poor, his parents worked and struggled to provide for Francisco and their other children. Id at 71. When he was a teenager, his mother became seriously ill. The events that followed immediately had a tragic, profound and traumatic effect upon Francisco. They undoubtedly explain his present criminal behavior and his incarceration. The family was traveling by car to Florida for a family vacation when his mother had a seizure and suddenly passed away. Id at 68. Francisco was present, and the effect of her death has never left him. It had such a devastating effect on him that for months he slept with her ashes in his bed. Id at 68. Although the defendant is unable to point to a direct link between this tragic event and Francisco's    criminal behavior, the connection is obvious. At 16 his life was changed forever. Francisco's father had to stay home to take care of his children, and the family income, as little as it had been, plummeted. His father had said that Francisco  was always very immature for his age and presently, although listed as 22 years old physically, he appears to family members to behave like a 16 year old. Id at 71. His

father tried the best he could to guide Francisco, but admittedly, he was frustrated and did not succeed. As a young man in high school who was in Junior ROTC, id at 71, he began stealing cars in his Bridgeport neighborhood. Ultimately, the thefts proceeded to the stealing of catalytic converters and his involvement with Mr. Kolitsas, the principal defendant in this case. Despite the tragedies and difficulties in Francisco's life, he did not, like many young men from an urban ghetto engage in drug selling. He furthermore never committed acts of violence or possessed a firearm.

He has been confined in state prison since May 2022 on a variety of state theft charges as set forth in the pre-sentence report. It is anticipated that he will plead and be sentenced on these charges after the disposition of his federal case. None of this period of incarceration will be credited by the Bureau of Prisons toward the federal sentence that this court imposes.

However, Francisco has used his time wisely and is beginning to reach a level of maturity that he should have achieved years ago. He has had no disciplinary tickets while confined in the state correctional system. He received a letter of recommendation in April in the schooling classes which he has enrolled to attempt to obtain a GED. Both the prison administrator and his teacher described him as "focused" and a person who "works very hard". (Exhibit A). His newfound drive can be continued. Francisco with the loving support of his father may be able to lead a productive life upon his release from incarceration.

## II.     A Sentence Below the Applicable Guidelines Range is Sufficient to Comply with the Purposes of Sentencing

The Court must impose a sentence that is "sufficient, but not greater than

necessary". 18 U.S.C. §3553(a). Title 18, United States Code §3553(a) provides the framework within which a sentencing judge must determine the appropriate sentence for a defendant:

> <u>Factors to be considered in imposing sentence</u>. The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider:
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>     A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>     B. to afford adequate deterrence to criminal conduct;
>
>     C. to protect the public from further crimes of the defendant; and
>
>     D. to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentence available;
>
> (4) the kinds of sentence and the sentencing range established for –
>
>     A. the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines
>
> (5) any pertinent policy statement –
>
>     A. issued by the Sentencing Commission ...
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a)

As the Court is well aware, it has been established since 2005 that the

mandatory nature of the Guidelines was unconstitutional, and that the Guidelines' binding authority violated a defendant's Sixth Amendment right to trial by jury, *See United States v. Booker*, 543 U.S. 220 (2005). While a sentence court is now still required to consider the Guideline range, it also must consider, equally, the other factors enumerated under §3553(a) when imposing a sentence. This concept was upheld in *Gall v. United States*, 552 U.S. 38 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007), where the United States Supreme Court ruled that the District Court is held to no special standard when it departs from the advisory Guidelines, and that such sentences on appeal, no matter how far above or below the Guidelines range, are only reviewed under the highly deferential abuse-of-discretion standard.

*Gall's* significant limitation on the reach of Appellate Courts to overturn the sentencing decisions of the district court, in particular, confirms that district courts are once again free to impose "individualized justice" as articulated by the Second Circuit, *United States v. Crosby,* 397 F.3d 103, 114 (2d Cir. 2005). Thus, while a sentencing court must consider the applicable Guidelines range, there is no presumption that a sentence within that range satisfies all the objectives of §3553(a).

In the present case, based upon a number of factors outlined herein, a sentence well below the Guideline range is warranted.

### III.     The Guidelines and Defendant's Request for a Variance

There is no issue with the computation of his guidelines as contained in the pre-sentence report.  PSR at 42. With a Criminal History Category I, the parties agree with probation  that his guideline range is 30 to 37 months.  Id at 47. However, Francisco is

requesting a variance for the reasons set forth in the pre-sentence report. Id at 111. The United States Sentencing Commission proposed in April 2023 that all defendants who have no criminal history points, with a few limited exceptions, should receive a two point downward adjustment of the guidelines score. This guideline will not come into effect until November 1, 2023. Should Francisco receive a two point adjustment, his offense level would become 17 and his guideline range would be lowered to 24 to 30 months. Id. Defendant is requesting that the Court vary the guideline range to account for the Sentencing Commission's guideline amendment. When the defendant is sentenced on July 18, he will only be four months short of the date when the new amendment comes into effect. Other defendants in the case still have their cases pending, and had the defendant protracted his change of plea until November, the request for variance would not be necessary. He would automatically be in offense level 17 based upon the changes in the guideline computation. The ultimate guideline range should not depend upon such arbitrary factors.

Federal courts have long held that a sentencing Court may consider a downward variance for guidelines that have been promulgated but not yet approved by Congress. *See, United States v. McMillan*, 863 F.3d 1053, 1058 (8th Cir. 2017) ("Although District Courts are required to apply the guidelines in effect on the date of sentencing, they may consider pending amendments to the guidelines"); *United States v. Ruiz-Apolonio*, 657 F.3d 907, 917 (9th Cir. 2011) ("A sentencing court, of course, has the discretion to grant a variance from the guidelines after promulgation but before adoption of a proposed amendment"); *United States vs. Lua-Guizar*, 656 F.3d 563, 567 (7th Cir. 2011) ("The Court could have considered the pending amendment"); *United States v. Miranda-*

*Garcia*, 417 Fed. Appx. 895, 897 (11th Cir. 2011) (Variance based on pending amendments to the U. S. Guidelines is "discretionary".); *United States v. Frierson*, 308 Fed. Appx. 298, 302-3 (10th Cir. 2007) (Defendant given downward departure of 15 months in light of pending amendment to Guidelines).

Francisco clearly meets the criteria of the amendment which comes into effect November 1. He is not just someone who has no criminal history points because convictions were too old to count. He has no criminal history points because he has never had a conviction for a crime. Statistically, people such as Francisco have a far lower rate of recidivism than defendants who have had repeated convictions.

Additionally, another basis for a variance is the difficulty created for Francisco because he is presently in state custody. Had he not been detained in state custody, all of Francisco's jail time from September 2, 2022, when he was presented before a U. S. Magistrate Judge would be credited towards his sentence by the Bureau of Prisons. However, he has never been in federal custody, and he will not get any credit at all for the period of his incarceration by the Bureau of Prisons. While the state cases may be reduced for the period in which he was in state custody, that will be of little benefit to him. It is anticipated the State cases will either be nolled or he will receive sentences concurrent and not overlapping to the federal sentence. He is respectfully requesting a further variance because of his present detention in state court under state custody.

**IV.    Conclusion**

The defendant is respectfully requesting a sentence substantially below the guidelines for the reasons set forth in this sentencing memorandum. Although he is 22 years, he has been described as having the mentality and emotional state of a 16 year

6

old child.  He has state cases pending for other thefts all occurring around the same time as the present offense. He comes before this Court with no prior convictions. It is requested that this Court apply the principles of incremental punishment and treat Mr. Ayala as a first offender and sentence him accordingly.

                                      Respectfully submitted,
                                      DEFENDANT, FRANCISCO AYALA


By:    */s/ Richard S. Cramer*
           Richard S. Cramer
           21 Oak Street, Suite 308
           Hartford, CT 06106
           Tel. 860.560.7704
           Fax 860.560.7706
           Federal Bar #ct00016

**CERTIFICATION**

Pursuant to the Court's designation of this matter as an electronically filed case, and in accordance with the requirements for certification of service in such cases, the undersigned certifies that the foregoing document was filed electronically on the 5th day of July 2023. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.



*/s/ Richard S. Cramer*
Richard S. Cramer